**KOLLER LAW, P.C.**
By: David M. Koller, Esq.
     Erin W. Grewe, Esq.
Attorney ID Nos. 90119/313787               Attorney for Plaintiff
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LISA KENT,** <br> **521 Pond View Court** <br> **Harrisburg, PA 17110** | : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| **Plaintiff,** <br> v. | : <br> : <br> : <br> : | **Civil Action No.** |
| **KEYSTONE HUMAN SERVICES** <br> **124 Pine Street** <br> **Harrisburg, PA 17101** | : <br> : <br> : <br> : | |
| **Defendant.** | : <br> : | |

## CIVIL ACTION

Plaintiff, Lisa Kent, by and through her attorneys, Koller Law, P.C. bring this civil matter against Defendant Keystone Human Services avers and alleging that she was subject to unlawful violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA"), as amended, and avers and alleges as follows:

## THE PARTIES

1. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

2. Plaintiff resides at the above captioned address.

1

3. Defendant Keystone Human Services ("Defendant") is a family of nonprofit organizations that provides comprehensive community-based services for children, young people, adults and families in the areas of intellectual disabilities, autism, mental health, early intervention and children and family services.

4. Defendant employed Plaintiff as a Program Director at two residential facilities that are operated by Defendant from August 22, 2011 until July 2, 2013.

5. Plaintiff was responsible for the supervision of direct care workers or Community Support Associates "(CSAs")."

6. At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of whom acted within the scope of his or her job responsibilities.

## JURISDICTION AND VENUE

7. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

8. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

9. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

10. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil

Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PLAINTIFF EXHAUSTED HER ADMINISTRATIVE REMEDIES

12. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

13. Plaintiff exhausted her administrative remedies under Title VII. Butterbaugh v. Chertoff, 479 F. Supp. 2d 485 (W.D. Pa. 2007).

14. On or about July 15, 2013, Plaintiff filed a timely written Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging that she was discharged by Defendant in retaliation for protected activity, as well as sex and disability discrimination.

15. The Charge was assigned a Charge Number of 530-3201-03156 and was duly filed with the Pennsylvania Human Relations Commission ("PHRC").

16. Plaintiff received a Notice of Right to Sue relative to the Charge dated December 4, 2013. A true and correct copy of this Charge is attached and incorporated herein as Exhibit "A".

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of the Notice of Right to Sue letter relative the Charge.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

## FACTUAL SUMMARY

19. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

20. Defendant first hired Plaintiff in or around 1998.

21. Defendant rehired Plaintiff on or around August 22, 2011 in the position of Program Director.

22. Plaintiff was responsible for the supervision of direct care workers or Community Support Associates "(CSAs)".

### Plaintiff Reported Violations of Federal and State Law Internally

23. The Occupational Safety and Health Act of 1970 (hereinafter "OSH ACT"), Section (5)(a)(1) requires that:

    > Each employer --(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

    OSH ACT (5)(a)(1).

24. The National Fire Protection Association ("NFPA") 101 Life Safety Code requires, in part, that "door openings in horizontal exits shall be protected by a swinging door providing clear width not less than 32 inches." NFPA 101 Life Safety Code 2000 Edition, Chapter 19, Section 19.2.2.5.4.

25. 29 C.F.R. 1910.22(a)(2) requires that:

    > The floor of every workroom shall be maintained in a clean and, so far as possible, a dry condition. Where wet processes are used, drainage shall be maintained, and false floors, platforms, mats, or other dry standing places should

be provided where practicable.

26. On or about August 21, 2012, Plaintiff first reported to Andrew Krugh and Pamela Pryzie, Division Director, safety issues as Defendant's Nassau location.

27. Thereafter, Plaintiff followed up with Mr. Krugh and was led to believe that these safety issues were being resolved.

28. On or about January 17, 2013, Plaintiff on medical leave, again, believing that any outstanding issues would be addressed during her absence.

29. When Plaintiff returned from medical leave on April 22, 2013, she discovered that the safety issues had not, in fact, been addressed by Defendant.

30. On or about June 7, 2013, Plaintiff reported unsafe conditions or safety hazards at Defendant's Nassau location to her direct supervisors, Ayoade Adelanwa and Kirk Mixell, both Service Directors.

31. In her email to Mr. Adelanwa, Plaintiff included a copy of an April 2013 email from Dave Harrington, a coworker, to Mr. Krugh in which Mr. Harrington described that the doorway in the group home was too narrow for employees to evacuate residents in the event of a fire.

32. Four days later, on or about June 11, 2013, Plaintiff emailed Kimberly Miscavage, Human Resources Director, reporting safety hazards in the group homes where she worked and requesting a Compliance Investigation.

33. In this email, Plaintiff stated she made recommendations on August 21, 2012 to her supervisors, Andrew Krugh and Pamela Pryzie, about potential safety hazards at Defendant's Nassau Road location.

34. Plaintiff complained about the following conditions at Defendant's location:

5

   a. The doorway in the group home was too narrow for employees to evacuate residents in the event of a fire;

   b. The group home did not have a sprinkler system;

   c. There was no water retainer in the bathroom, causing water to flow onto the bathroom floor and creating a dangerous condition for employees who must bathe residents; and

   d. Employees were required to lift non-ambulatory residents without the assistance of portable lifts.

### Defendant Suspended Plaintiff One Week After She Reported Violations

35. On June 19, 2013, only one week after Plaintiff's most recent complaint, Defendant initiated an investigation against Plaintiff for allegedly falsifying documents and placed her on administrative leave.

### Plaintiff Reported Violations of Federal and State Law to OSHA

36. On June 25, 2013, Plaintiff made a complaint to the Occupational Safety and Health Administration ("OSHA") regarding the following:

   a. The doorway in Defendant's group home was too narrow for employees to evacuate residents in the event of a fire;

   b. Defendant's group home did not have a sprinkler system;

   c. There was no water retainer in the bathroom, causing water to flow onto the bathroom floor and creating a dangerous condition for employees who must bathe residents; and

   d. Employees were required to lift non-ambulatory residents without the assistance of portable lifts.

**Defendant Terminated Plaintiff One Week After She Reported Violations to OSHA**

37. On July 2, 2013, Defendant terminated Plaintiff's employment.

38. Plaintiff avers, upon information and belief, that but for her report of Defendant's conduct, including Defendant's violation of OSH ACT (5)(a)(1), NFPA 101 Life Safety Code 2000 Edition, Chapter 19, Section 19.2.2.5.4, and 29 C.F.R. 1910.22(a)(2), Defendant would not have terminated her employment based on an alleged falsification of the medical log.

39. Upon information and belief, other individuals who did not report "safety hazards" (i.e. OSHA violations) were not terminated for documentation errors.

**Plaintiff Engaged in Protected Activity by Reporting Disability Discrimination**

40. Beginning in August 2012, Plaintiff made complaints to various members of Defendant's supervisory staff about Defendant's treatment of individuals with disabilities.

41. In August 2012, Plaintiff submitted the following recommendations to Ms. Pryzie and Mr. Krugh:

    a. Fire hazard: in the event of a real fire, the employee/staff person would not be able to evacuate at least one of the residents because the doorway is too narrow to allow his wheelchair access;

    b. Great risk of potential falls: the shower contains no water retainer, making it impossible for any employee/staff person to provide proper bathing/hygiene and creates a safety hazard when water pools on the floor;

    c. Potential injuries to employee/staff persons: Defendant did not provide a portable lift to allow ease of transfer of at least one resident.

42. In an email dated June 7, 2013, Plaintiff stated that as she expressed in her previous

7

emails, her primary concerns in the clients' safety and quality of life.

43. In a letter dated June 10, 2013 addressed to Kimberly Miscavage, Director of Human Resources, Plaintiff complained that Defendant was not accommodating the needs of its clients with physical disabilities.

44. Of the four clients at Defendant's Nassau location, one was blind, one was deaf, and two utilized wheelchairs.

### Defendant Suspended Plaintiff Nine (9) Days After She Complained of Discrimination

45. On June 19, 2013, only nine (9) days after Plaintiff complained on behalf of her clients, Defendant initiated an investigation against Plaintiff for allegedly falsifying documents and placed her on administrative leave.

### Defendant Terminated Plaintiff Twenty-Two (22) Days after She Complained of Discrimination

46. Thereafter, on July 2, 2013, Defendant terminated Plaintiff's employment.

47. Plaintiff avers, upon information and belief, that but for her report of Defendant's conduct, including Defendant's violation of her client's rights under the Americans with Disabilities Act, Defendant would not have terminated her for an alleged falsification of the medication log.

### Plaintiff Notified Defendant of Her Disability and Requested a Reasonable Accommodation

48. On June 6, 2013, Plaintiff's supervisors, Ayoade Adelanwa and Kirk Mixell, both Service Directors, advised her that she would have to work Direct Care Skills.[1]

49. At that time, Plaintiff verbally notified Mr. Adelanwa and Mr. Mixell that she was unable to physically lift because of her medical condition.

---

[1] Direct Care Skills are tasks performed for the individual client, including,, but not limited to, cooking, bathing clients and performing van runs to transport clients.

8

50. By way of letter dated June 10, 2013, Plaintiff provided Kimberly Miscavage, Director of Human Resources proof of her medical restrictions due to a physical disability.

51. Plaintiff provided a physician's note from PinnacleHealth Medical & Surgical Associates to Ms. Miscavage, which stated,

> This patient is under my care. Due to her severe sciatica, she is unable to lift anything more than 30 pounds. She should not be lifting anything on a daily basis. Please excuse her from having to perform any of these types of activities.

52. Under Defendant's policies, Plaintiff, as a salaried management employee was not supposed to perform Direct Care Skills on a regular or consistent basis; but only in emergency situations.

53. Plaintiff informed Ms. Miscavage that she effectively operated in her position since her hire in August 2011 with performing only minimal Direct Care Skills.

**Defendant Refused to Accommodate Plaintiff or Even Engage in the Interactive Process**

54. Defendant refused Plaintiff's request for an accommodation with respect to her ability to lift more than thirty (30) pounds.

55. Defendant also refused Plaintiff's proposed accommodation in the form of a transfer to a less physically demanding site.

56. Defendant did not engage in the interactive process with Plaintiff.

57. At no time did Defendant discuss available job openings with Plaintiff.

58. At no point did Defendant attempt to address Plaintiff's medical restrictions.

**Defendant Suspended Plaintiff Nine (9) Days After She Requested an Accommodation**

59. On June 19, 2013, nine (9) days later, Defendant initiated an investigation against Plaintiff for allegedly falsifying documents and placed her on administrative leave.

60. Upon information and belief, Defendant did not suspend other individuals for allegedly

falsifying medication logs who did not request an accommodation.

### Defendant Terminated Plaintiff Twenty-Two (22) Days after She Requested a Reasonable Accommodation

61. Thereafter, on July 2, 2013, Defendant terminated Plaintiff's employment.

62. Upon information and belief, Defendant did not terminate other individuals for allegedly falsifying medication logs who did not request an accommodation.

### Plaintiff Requested Leave Under Family Medical Leave Act ("FMLA")

63. Plaintiff requested medical leave from January 17, 2013 through April 22, 2013 for surgery on her knee related to her disability (sciatica).

64. Defendant granted Plaintiff's request for leave.

65. Plaintiff returned to work on April 22, 2013, as scheduled.

66. Thereafter, Plaintiff's treating physician informed Defendant that Plaintiff "is currently under my medical care and may not return to work at this time. Please excuse [Plaintiff] from work on 6/11/2013 to 6/16/13. She may return to work on 6/17/13."

### Defendant Suspended Plaintiff the Day She Was Scheduled to Return to Work

67. On June 19, 2013, the day Plaintiff was scheduled to return to work, Defendant initiated an investigation against Plaintiff for allegedly falsifying documents.

68. On that day, Defendant placed Plaintiff on administrative leave.

### Defendant Terminated Plaintiff in Retaliation for Requesting and Taking FMLA Leave

69. Thereafter, on July 2, 2013, Defendant terminated Plaintiff's employment.

### COUNT I – WRONGFUL DISCHARGE
### IN VIOLATION OF PENNSYLVANIA'S PUBLIC POLICY EXCEPTION

70. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

10

71. Federal and Pennsylvania law, including, but not limited to, the OSH ACT (5)(a)(1), NFPA 101 Life Safety Code 2000 Edition, Chapter 19, Section 19.2.2.5.4, and 29 C.F.R. 1910.22(a)(2) prohibits Defendant for committing the workplace violations alleged above

72. Federal and Pennsylvania law, including, but not limited to, the OSH ACT (5)(a)(1), NFPA 101 Life Safety Code 2000 Edition, Chapter 19, Section 19.2.2.5.4, and 29 C.F.R. 1910.22(a)(2), and Pennsylvania public policy imposed a duty upon Plaintiff to report the aforesaid violations of Defendant, both internally and to OSHA.

73. Defendant's termination of Plaintiff's employment for reporting the aforesaid violations constitutes wrongful discharge under Pennsylvania's public policy exceptions to the employment-at-will doctrine.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RETALIATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

74. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

75. Defendant engaged in unlawful employment practices against Plaintiff in violation of section 12203 of the ADA. 42 U.S.C. § 12203. Such acts were knowing and intentional.

76. To recover for retaliation under the ADA, the plaintiff must show that: (1) he engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the plaintiff's protected activity; and (3) a causal link exists between the plaintiff's protected activity and the employer's adverse action. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

77. As to the first element, a protected activity is any opposition to an employment practice deemed to be discriminatory under the ADA. 42 U.S.C. § 12203

78. An informal letter stating a specific complaint about discriminatory behavior can be sufficient. See Barber v. CSX Distribution Services, 68 F.3d 694, 701-02 (3d Cir. 1995); Bianchi v. City of Phila., 183 F.Supp.2d 726, 739 (E.D. Pa. 2002). An employee does not need to demonstrate that the action she protests is actually a violation of the ADA. Instead she needs only to have a good faith belief that his behavior is protected conduct. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996).

79. Plaintiff did have the requisite good faith belief she was protesting protected conduct in that in or about August 2012, Plaintiff complained that she did not believe Defendant was adequately treating the physical needs of its disabled clients.

80. Plaintiff also had the requisite good faith belief that she was protesting protected conduct in that on or about June 7, 2013, Plaintiff stated in an email to Defendant that she did not believe Defendant was adequately addressing the clients' safety and quality of life.

81. Plaintiff also had the requisite good faith belief that she was protesting protected conduct in that on or about June 10, 2013, Plaintiff complained to Kimberly Miscavage, Director of Human Resources, that Defendant was not accommodating the needs of its clients with physical disabilities.

82. Plaintiff's good faith belief that he was protesting protected discriminatory conduct is based on his complaint, and establishes the first prong of a prima facie case for retaliation.

83. As to the second element for retaliation, Defendant took an adverse employment action against Plaintiff on June 19, 2013 when it initiated an internal investigation against

Plaintiff and placed her on administrative leave.

84. Defendant also took an adverse employment action against Plaintiff on July 2, 2013 when it terminated her for allegedly falsifying medication logs.

85. As to the third element for retaliation, a "temporal proximity" between the protected activity and the alleged retaliatory act may be sufficient to support an inference of causation. Farrell, 206 F.3d at 279.

86. Approximately nine (9) days elapsed between Plaintiff's most recent complaints to Defendant and her placement on administrative leave, thus creating an inference of causation.

87. Furthermore, less than twenty-two (22) days elapsed between Plaintiff's most recent complaints to Defendant and Defendant's termination of Plaintiff, thus creating an inference of causation.

88. At all times material hereto, Defendant acted by and through its respective employees and/or agents who acted within their respective capacity to discipline, hire and/or fire Plaintiff.

89. The effect of the Defendant's unlawful retaliation has been to deprive Plaintiff of equal employment opportunities, to adversely affect Plaintiffs professional status, and to cause Plaintiff to suffer economic losses, including lost wages and benefits, interest, medical expenses, reasonable attorney's fees, and future pecuniary losses, as well as emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other nonpecuniary losses, in amounts to be proven at trial, in retaliation for Plaintiff's protected activity under the ADA.

90. Defendant is both the statutory and actual employer of Plaintiff in that it paid Plaintiff's

wages and provided benefits, directed Plaintiff's work activities, supervised her work activities and had power to hire, fire and discipline her.

91. Defendant is vicariously liable for the wrongful acts of its employees, agents, officers, board members and representatives as described herein above.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

92. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

93. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12102.

94. Plaintiff was diagnosed with severe sciatica.

95. Defendant was aware of this diagnosis, because Plaintiff was on medical leave from January 17, 2013 through April 22, 2013 for surgery on her knee related to her disability.

96. Plaintiff is able to perform the essential functions of the job of Program Director, with or without reasonable accommodations.

97. Prior to Plaintiff's medical leave of absence, management staff, including Program Directors, was instructed not to engage in Daily Care Skills on a regular or continuous basis.

98. Because of his disability, sciatica, Plaintiff is substantially limited in the types of activities "that are of central importance to daily life," as required under the ADA. See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002).

99. Plaintiff's disability limits the following major life activities: lifting more than thirty (30)

pounds, repetitive motion and bending.

100. On June 6, 2013, shortly after Plaintiff's return from surgery, Plaintiff's supervisors, Mr. Ayoade Adelanwa and Kirk Mixell stated that Plaintiff would need to begin Daily Care Skills on a daily basis.

101. During that meeting, Plaintiff informed Mr. Adelanwa and Mr. Mixell that she had a medical restriction which prevented her from lifting.

102. Thereafter, on June 10, 2013, Plaintiff provided Ms. Miscavage, Director of Human Resources, with a letter and doctor's note substantiating her physical limitations.

103. The doctor's note stated:

> This patient is under my care. Due to her severe sciatica, she is unable to lift anything more than 30 pounds. She should not be lifting anything on a daily basis. Please excuse her from having to perform any of these types of activities.

104. Plaintiff requested an accommodation from Defendant.

105. Plaintiff also requested a transfer to a less physically intense location as a reasonable accommodation.

106. After Plaintiff made this request for reasonable accommodation, Defendant denied his request and/or did not act upon it.

107. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his disability.

108. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein, including but not limited to her suspension on June 19, 2013 and eventual termination on July 2, 2013.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISCRIMINATION/RETALIATION
## VIOLATION of the FAMILY MEDICAL LEAVE ACT, FMLA 29 USCA §2615(b) *et. seq.*

109. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

110. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C) Plaintiff was eligible for Family and Medical Leave.

111. At all material times Defendants knew, or should have known, of Plaintiff's need for continuous medical leave to care for her own serious medical condition.

112. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

113. Defendant approved Plaintiff for leave under the FMLA from January 17, 2013 through April 22, 2013.

114. Upon Plaintiff's return from leave allowed under the FMLA, Defendant initiated an investigation against Plaintiff on June 19, 2013 and placed her on administrative leave.

115. Thereafter, Defendant terminated Plaintiff on July 2, 2013.

116. Defendant's motivation for suspending and eventually terminating Plaintiff was causally connected to Plaintiff's assertion of FMLA leave.

117. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

118. As a direct and proximate result of Defendant's demotion and wrongful termination, Plaintiff is and was deprived economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not

made in good faith.

119. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

120. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Lisa Kent, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII and the ADA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for his adverse actions, disciplines; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,
KOLLER LAW, P.C.

Date: March 5, 2014     By:     *[signature]*
David M. Koller, Esq.
Erin W. Grewe, Esq.
*Counsel for Plaintiff*