**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA KENT, | : | |
|     **Plaintiff** | : | **No. 1:14-cv-00413** |
| | : | |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **KEYSTONE HUMAN SERVICES,** | : | |
|     **Defendant** | : | |

**<u>MEMORANDUM</u>**

Before the Court is the motion to partially dismiss Plaintiff's amended complaint (Doc.

No. 5), by Defendant Keystone Human Services.  (Doc. No. 6.)  For the reasons that follow, the

Court will grant Defendants' motion for partial dismissal.

## I.      BACKGROUND

This case concerns the Defendant-employer's allegedly wrongful termination of

Plaintiff's employment as a supervisor of home care providers.  (Doc. No. 5 at 1-2.)  Plaintiff

began working for Defendant on August 22, 2011.  (<u>Id.</u> at 2.)  Defendant is a group of non-profit

organizations that provide services for individuals with disabilities.  (<u>Id.</u> at 1-2.)  In August of

2012, Plaintiff reported what she believed to be violations of various state occupation and safety

laws to responsible employees of the Defendant.  (<u>Id.</u> at 5.)  Specifically, Plaintiff claims that

Defendant violated: (1) the Pennsylvania General Safety Law, 43 Pa. Stat. § 25-2; (2) the

Pennsylvania Fire and Panic Act, 34 Pa. Stat. § 50.24(e); and (3) the Pennsylvania Universal

Accessibility Law, 34 Pa. Code § 60.33.  (<u>Id.</u> at 5.)  Defendant's other employees assured

Plaintiff that the alleged violations were being handled, and she took medical leave on January

17, 2013.  (<u>Id.</u>)  She returned on April 22, 2013 to find the alleged violations unaddressed, so she

reported them again, this time to her direct supervisors.  (<u>Id.</u>)

After she complained to them, Plaintiff's supervisors notified her on June 6, 2013, that she would have to commence "direct care," which includes bathing and feeding clients. (Id. at 8.) Plaintiff suffered from severe sciatica and was unable to perform the physical requirements of direct care, so she provided medical evidence of her limitation to her human resources manager. (Id. at 8.) On June 10-11, 2013, Plaintiff sent e-mails to Defendant's human resources director, requesting a reasonable accommodation for her sciatica, renewing her complaints that Defendant's home care facilities were in violation of state law, and complaining that Defendant was not otherwise accommodating its disabled clients. (Id. at 5, 7.) The same day, Plaintiff again went on medical leave, this time from June 11, 2013, to June 19, 2013. (Id. at 9-10.) The day she returned, Defendant suspended Plaintiff pending an investigation into allegations that she falsified documents. (Id. at 5.) In another three weeks, on July 2, 2013, Defendant terminated Plaintiff's employment. (Id.)

Plaintiff initiated the above-captioned lawsuit by filing her complaint with this Court on March 5, 2014. (Doc. No. 1.) Plaintiff amended her complaint on May 12, 2014, and Defendant filed this motion to dismiss on May 27, 2014. (Doc. No. 6.) The only claim before the Court is Plaintiff's argument that her termination violated Pennsylvania's so-called public policy exception to the general principles of at-will employment.[1] (See Doc. No. 10 at 2 n.2.)

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure require that complaints provide notice of claims and the grounds upon which they rest to the parties who are called upon to answer them. Phillips

---

[1] The motion to dismiss (Doc. No. 6), also sought dismissal of Plaintiff's claim that her discharge occurred in violation of Pennsylvania's Whistleblower Law, but Plaintiff has stipulated to the dismissal of that claim (Doc. No. 10).

v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  Although Federal Rule of Civil

Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the

pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of

Civil Procedure 12(b)(6) if it "fail[s]  to state a claim upon which relief can be granted."  See

Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618

F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standard of Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), which demands a "more heightened form of pleading."

See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  As such, all civil complaints

must set out "sufficient factual matter" to show that the claim is facially plausible, or they risk

dismissal.  Id.  Accordingly, to determine the sufficiency of a complaint, the United States Court

of Appeals for the Third Circuit has identified the following steps a district court must take when

determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a

plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the

complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded

factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief."

See Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks

omitted).

While dismissals under Rule 12(b)(6) are most commonly without prejudice, grounds for

dismissal with prejudice include "undue delay, bad faith, dilatory motive, prejudice, and

futility." <u>See</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997).  A

court may deny a party leave to amend a dismissed complaint when the deficiency could not be

cured by amendment.  <u>See</u> <u>Shane v. Fauver</u>, 213 F.2d 113, 115 (3d Cir. 2000).

## III.    DISCUSSION

Plaintiff urges the Court to find that Pennsylvania's public policy exception to the

general principles of at-will employment applies to her situation.  (Doc. No. 5 at 17-18.)

Plaintiff concedes that she is an at-will employee, and such employees "may be terminated at

any time, for any reason or for no reason."  <u>Stumpp v. Stroudsburg Mun. Auth.</u>, 658 A.2d 333,

335 (Pa. 1995).  Pennsylvania hews to the "traditional view" of at-will employment, and any

limitations on an "employer's inherent right to operate its business," must be "few and carefully

sculpted."  <u>Rothrock v. Rothrock Motor Sales, Inc.</u>, 584 Pa. 297, 305 (Pa. 2005).  Against this

entrenched principle, the Supreme Court of Pennsylvania has recognized a very limited

exception, affording terminated employees a judge-made cause of action for wrongful

termination only in the rare case where the termination violates "a clear mandate of

[Pennsylvania] public policy."  <u>McLaughlin v. Gastrointestinal Specialists, Inc.</u>, 70 A.2d 283,

287 (Pa. 2000).  Courts should find that a termination violates Commonwealth public policy

"only in the clearest of cases."  <u>Weaver v. Harpster</u>, 975 A.2d 555, 563 (Pa. 2009).  In addition,

terminated employees may invoke the public policy exception only in the absence of any

applicable statutory remedy.  <u>Novosel v. Nationwide Ins. Co.</u>, 721 F.2d 894, 898 (3d Cir. 1983);

<u>Weaver</u>, 975 A.2d at 568 n.10.  For example, where the Pennsylvania Human Relations Act, 43

Pa. Stat. §§ 951 <u>et seq.</u>, provides a remedy in a wrongful discharge action based on gender

discrimination, the public policy exception is unavailable.  <u>See</u> <u>Sola v. Lafayette College</u>, 804

4

F.2d 40, 42 (3d Cir. 1986).  In that way, the public policy exception embodies a residual category of situations where Pennsylvania public policy protects an individual employee from the unrestrained whims of an at-will employer, but where no legislature has taken the affirmative step of enacting a law providing explicit protection to him or her.  See id.  Defendant argues that the Pennsylvania Whistleblower Law preempts any claim Plaintiff may have under the public policy exception, and failing that, Defendant argues that Plaintiff cannot establish a clear mandate of Pennsylvania public policy that could justify applying the exception to her case.  The Court addresses these arguments in turn.  (Doc. No. 9 at 5.)

### A.    Pennsylvania Whistleblower Law

Defendant argues that the public policy exception is unavailable to Plaintiff, because the Pennsylvania Whistleblower Law, 43 Pa. Stat. §§ 1421, et seq., provides Plaintiff with a preemptive statutory remedy.  (Doc. No. 9 at 11.)  Courts have held that Pennsylvania's whistleblower statute has the same preemptive effect on the common law public policy residuum as other statutes, and have accordingly barred plaintiffs from pursuing the public policy exception when the whistleblower law affords a remedy.  See e.g., Katzenmoyer v. City of Reading, Pa., 158 F. Supp. 2d 491, 503-04 (E.D. Pa. 2001); Freeman v. McKellar, 795 F.Supp. 733, 742 (E.D. Pa. 1992).

At this juncture, however, it is not clear to the Court that the Whistleblower Law places within its ambit Defendant's business or Plaintiff's conduct.  Within the private sphere, the Whistleblower Law's coverage is limited to those entities "funded in any amount by or through" public authorities.  43 Pa. Stat. § 1422.  At least one federal district court has found that private healthcare providers funded in part through Medicare and Medicaid reimbursement fall outside

5

the statute's scope.  Cohen v. Salick Health Care, Inc., 772 F.Supp 1521, 1526-27 (E.D. Pa.

1991).  In the Whistleblower Law cases Defendant cites in support, the employers were each

unquestionably public.  See Katzenmoyer, 158 F.Supp. 2d at 503-04 (municipal employer);

Freeman, 795 F.Supp. at 742 (municipal employer); Palazzolo v. Damsker, No. 10-07430, 2011

WL 2601536, at *1 (E.D. Pa. June 30, 2011) (county employer); DeMuro v. Phila Hous. Auth.,

No. 98-3137, 1998 WL 962103, at *4 (E.D. Pa. Dec. 22, 1998) ("Commonwealth agency"

employer).  Accordingly, the Court does not find Plaintiff's claims are preempted by the

Pennsylvania Whistleblower Law at this juncture; further factual development may reveal that

Defendant is a covered employer, but that much is not clear on the face of the complaint.

### B.      Public policy mandate

 Defendant also argues that Plaintiff cannot show a public policy mandate that would

abridge Defendant's right to terminate her employment at will.  (Doc. No. 9 at 5.)  A "clearly

mandated public policy" is necessary before the exception will apply.  Novosel, 721 F.2d at 899.

These clear mandates are exceedingly rare, but they have been found where, for example: an

employee is terminated for applying for worker's compensation benefits, a seasonal employee is

terminated for filing an unemployment benefits claim, and where a nuclear energy employee is

terminated for making a report mandated by federal law.  Rothrock, 883 A.2d at 515 (collecting

cases); Field v. Phila. Elec. Co., 565 A.2d 1170, 1180 (Pa. Super. 1989).  Courts have been

reticent to recognize a public policy mandate inuring to the benefit of a terminated employee

unless the employer has committed an illegal act or has induced its employee to do the same,

because "absent a violation of law, it is difficult for an at-will employee seeking recovery for

wrongful discharge to point to a common law, legislative, or constitutional principle from which

a clear public policy [mandate] could be inferred." <u>Clark v. Modern Grp, Ltd.</u>, 9 F.3d 321, 328 (3d Cir. 1993).  As both parties recognize, "[t]he narrow exceptions to the at-will employment doctrine in Pennsylvania fall into three categories: an employer (1) cannot require an employee to commit a crime; (2) cannot prevent an employee from complying with a statutorily imposed duty; and (3) cannot discharge an employee when specifically prohibited from doing so by statute." (Doc Nos. 9 at 7, 10 at 6) (citing <u>Fraser v. Nationwide Mut. Ins. Co.</u>, 352 F.3d 107, 113 (3d Cir. 2003) (citation omitted).).

Plaintiff claims that she falls into the second of the above-listed <u>Fraser</u> categories, at least for the sake of the public policy inquiry.  According to her, the statutes that Defendant violated imposed an affirmative duty on her to report violations of them.[2]  (<u>See</u> Doc. No. 10 at 7.) Defendant argues that none of Plaintiff's cited statutes textually imposes a reporting duty, and that the Court should decline to infer the existence of such a duty.  (Doc. No. 9 at 10.)  The Court agrees, and finds that Plaintiff cannot avail herself of the public policy exception.

While the United States Court of Appeals for the Third Circuit recognized the three categories outlined above in <u>Fraser</u>, they were first collected in the Superior Court of Pennsylvania in 1997 in <u>Shick v. Shirey</u>, 691 A.2d 511, 513-14 (Pa. Super. 1997), <u>rev'd</u>, 716 A.2d 1231 (Pa. 1998), and then repeated by another panel of the Superior Court in <u>Hennessy v. Santiago</u>, 708 A.2d 1269, 1273 (Pa. Super. 1998).[3]  <u>Hennessy</u> is instructive here.  In that case, a

---

[2] There is some disagreement between the parties as to which regulations or statutes apply to govern Defendant's operations, but because none of the enactments raised by either party imposes an affirmative reporting duty, the differences are ultimately immaterial.  (<u>See</u> Doc. No. 9 at 7 n.4.)

[3] The Supreme Court of Pennsylvania overruled the Superior Court in <u>Shick</u>, and there is at least some authority to suggest that these three categories are not exhaustive.  <u>Spierling v.</u>

habilitative counselor lost her job after she reported a patient's rape to the local district attorney.

708 A.2d at 1272.  The <u>Hennessy</u> plaintiff claimed that the Mental Health Procedures Act, 50 Pa.

Stat. §§ 7101-7502, the Mental Health and Retardation Act, 50 Pa. Stat. § 4301, parts of the state

administrative code, and her national association's code of ethics all imposed an affirmative duty

to report the rape of a client.  <u>Id.</u> at 1273-74, 1273 n.1.  The Superior Court declined to find that

such an affirmative duty existed where, as here, none of the cited texts imposed the affirmative

obligation to report violations.  <u>Id.</u> at 1273-74.  As an example of a statute that <u>did</u> impose

affirmative reporting duties, the <u>Hennessy</u> panel cited a statutory section titled, "Persons

required to report suspected child abuse."  <u>Id.</u> at 1274 (<u>citing</u> 23 Pa. Stat. § 6311).  "As its title

suggests, this section [explicitly] requires certain people, including mental health professionals,

to report suspected child abuse."  <u>Id.</u>  The Superior Court revisited the public policy exception

again in a different case in 1999, finding that neither the state Professional Nursing Law, 63 Pa.

Stat. §§ 211-225.5 nor federal laws governing Medicare fraud "imposed a statutory duty upon"

the plaintiff to search her employer's records "and report the alleged fraud to federal

investigators."  <u>Spierling v. First Am. Home Health Servs.</u>, 737 A.2d 1250, 1254 (Pa. Super.

1999); <u>see also</u> <u>Smith v. Calgon Carbon Corp.</u>, 917 F.2d 1338, 1345-47 (3d Cir. 1990) (finding

public policy exception inapplicable to employee where no "positive law" required employee to

report environmental violations or "privileged" his disclosures.).  In the present case, Plaintiff

cites no specific statutory or administrative provision that placed upon her (or a person in her

position) the affirmative duty to report Defendant's alleged violations.  Accordingly, the Court

---

<u>First Am. Home Health Servs.</u>, 737 A.2d 1250, 1260 (Pa. Super. 1999) (Schiller, J., dissenting)
("[I]n <u>Shick v. Shirey</u>, our Supreme Court did not limit the public policy exception to [the
Superior Court's] criteria.").

finds that she does not fit within the public policy exception to Pennsylvania's general at-will employment policies, and will dismiss Count IV of her amended complaint.

Plaintiff's failure at this stage is not the result of any defect in her factual pleading, but instead reflects a finding that none of the public policies cited affords her a remedy under the public policy exception, and that consequently amendment would be futile.  Should further discovery make plain a more sound basis for invoking the public policy exception, Plaintiff may move the Court for leave to re-plead this claim.

IV.      **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has not stated a claim under Pennsylvania's public policy exception.  Accordingly, the Court will dismiss Count IV of Plaintiff's amended complaint with prejudice.  An order consistent with this memorandum follows.